[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 2, 1992, the defendant's car struck the rear end of plaintiff's vehicle while both cars were traveling south on Route 25 in Bridgeport. There is no doubt the collision was entirely the fault of the defendant. The only question to be resolved is the amount of damages to which plaintiff is entitled.
The plaintiff claims a C6-7 disc bulge, cervical sprain and brachial syndrome, hyperextension of the cervical spine, and a permanent disability of the cervical spine. She claims she was required to have medical treatment, orthopedic treatment and CT Page 7634 physical therapy, and will require it in the future. She has incurred medical expense and will require it in the future. She asserts she has suffered physical pain, mental anxiety, and emotional distress, all of which restricted her ability to carry on her life's activities, and will continue to do so. She also suffered lost wages.
She seeks double or treble damages under G.S.A. § 14-295.
Her life expectancy is stipulated as 39.6 years.
She claims damages of $124,161.05.
In light of the testimony, and exhibits the court finds it difficult to reach plaintiff's demand in a rear end collision which was certainly minor in impact. Dr. Paul Carpenter, a chiropractor, states in his report of May 7, 1993, that plaintiff was under his care from July 2, 1992 to March 17, 1993. She told him she had pain on the right side of her neck, mid back pain, and dull lower back pain. He had previously treated her from May 29, 1991 through October 5, 1991 a total of 21 visits, for injuries received in an automobile accident on May 4, 1991. He claims she was fully recovered on her last visit, but he did not describe the kind of injury she received from that accident.
An MRI examination at St. Vincent's Medical Center according to Dr. Carpenter, disclosed mild degenerative disc disease at C5/6 level and a mild bulge at C6/7 disc. This MRI was done November 8, 1992. He claims she had 60 treatments at his office over eight months. On her last examination March 17, 1993, her cervical range was reduced approximately 10% with some point tenderness in the right trapezius muscle. He asserts that she has a 15% permanent partial impairment to the cervical spine. Three percent of this pre-existed the automobile accident in the form of degenerative disc disease, leaving 12% disability attributed to the July 2, 1992 accident.
Her income tax returns for 1990 indicate $4,818, annual income for 1991 $5,958 income, and for 1992 $7,416. She is a hair dresser by occupation. CT Page 7635
She claims the following medical bills:
(1) Dr. Carpenter $6,282.00
(2) St. Vincent Hospital 576.70
(3) Dr. Katz 225.00
(4) Dr. Spellman 1,140.00
 (5) Dr. Boswein 843.35 --------- $9,067.05
Dr. Katz stated her preexistent degenerative disc disease caused a 5% permanent partial impairment of the cervical spin. She saw him only twice.
Dr. Spellman filed a report with plaintiff's counsel referring to his letters to Dr. Carpenter. His first letter to Dr. Carpenter is dated May 11, 1994. It is quite tentative in its tone and descriptions of her claimed problems, and makes no final diagnosis.
On May 25, 1994, what appears to be a report not addressed to anyone is in evidence. He states she is complaining of left hand, arm, and shoulder pain from the accident. An EMG of the left hand, forearm and upper arm muscles, shoulder muscles and cervical paraspinal muscles show no spontaneous activity at rest. The mildly abnormal EMG "may be more likely due to a chronic and old lesion at the spinal level."
Dr. Spellman's report of June 8, 1994, states there is a mild C7 radiculitis on the left with a C6-7 disc bulge. He is unable to determine when she was totally disabled from employment and he only assumes she was after the accident.
Dr. Boswein of the Holistic Health Care of Arizona, Phoenix, has no report or any indication of what his treatment was concerned with. In Box 13 of Exhibit 15 it states that "Benefits Assigned Signature of File." No estimates of any disability are made. The treatments given extended from March 1, 1995 to June 6, 1995. The sums billed do not appear to be an out-of-pocket expense of the plaintiff because she assigned all benefits to the Health Care Company.
It would also appear that approximately $5,000 of Dr. Carpenter's bill has been paid by "Amerhome". See plaintiff's Exhibit 5 pages 7-8. The court has no evidence before it to CT Page 7636 establish whether all or any part of the bills of Dr. Katz and Dr. Spellman have been paid by any insurance carrier. The bill of St. Vincent's Hospital indicates that plaintiff has Medicare and Medicaid numbers but the court does not have before it any specific information with reference to any payment made to Dr. Katz or Dr. Spellman or to St. Vincent's Hospital.
The court must therefore assume that no collateral source has paid the balance of the following bills:
(1) Dr. Carpenter $1,282.00
(2) St. Vincent Hospital 576.00
(3) Dr. Katz 225.00
 (4) Dr. Spellman 1,140.00 --------- Total $3,223.00
In the absence of evidence supporting collateral source payments, the court must accept the above figures for out-of-pocket medical expenses.
Plaintiff assumes without evidence that her future medical expenses will amount to $500 per year for 39.6 years, her life expectancy, for a total of $19,800. The court is not in a position to find this as proved fact in absence of expert testimony to support it. This leaves the question of how much the court should award for pain and suffering and "loss of activities" as claimed by plaintiff. The court finds these two items really cover one and the same thing. It would appear that plaintiff herself may see these two items in the same light, having made an identical claim of $46,647.00 for each of them.
Considering all the circumstances of this case a fair award to the plaintiff is the sum of $30,000 plus costs and the court so finds.
BY THE COURT, GEORGE A. SADEN STATE TRIAL REFEREE CT Page 7637